UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL JACKSON,

        Plaintiff,                     CIVIL ACTION NO. 12-CV-10645

    vs.                             DISTRICT JUDGE STEPHEN J. MURPHY

                                   MAGISTRATE JUDGE MONA K. MAJZOUB

LENIN AMARANTE, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Karl Jackson, a Michigan state prisoner, brings this pro se action alleging a violation of 42 U.S.C. § 1983 against Defendants Lenin Amarante and Farad Qureshi, two City of Detroit police officers, two unknown individuals, and the City of Detroit. (Docket no. 1.) Before the Court are Plaintiff's two Motions for Summary Judgment (docket nos. 20 and 24) and Plaintiff's Motion Amending his Motion for Summary Judgment (docket no. 28). Defendants filed responses to each Motion. (Docket nos. 23, 26, and 32.) Plaintiff filed two Replies in support of his Motions (Docket nos. 29 and 36.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 22.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[1]

**I.    Recommendation**

For the reasons that follow, the Court recommends denying Plaintiff's Motion for Summary

---

[1] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

1

Judgment [20], Plaintiff's Motion for Summary Judgment [24], and Plaintiff's Motion Amending his Motion for Summary Judgment [28].

## II. Report

### A. Facts[2]

On November 27, 2010, at approximately 7:30 p.m., Defendants Amarante and Qureshi responded to a call at Plaintiff's residence. (*See* docket no. 1 at 7.) Plaintiff's live-in girlfriend had called the police to report that Plaintiff had assaulted her earlier that day. (Docket no. 23-3 at 1.) Plaintiff was not at the scene when Defendants arrived. Plaintiff's girlfriend told the police that Plaintiff had grabbed her by the neck, shoved her onto a chair, and threatened to have her killed after she told Plaintiff that she did not want to be in a relationship with him.[3]  (*Id.*)  Defendants also interviewed a neighbor who did not witness the assault but heard Plaintiff threaten to have his girlfriend killed.[4]  (*Id.*)

While Defendants were conducting their investigation, Plaintiff arrived on the scene. (Docket no. 23-3 at 1.) Defendants drew their weapons, pushed Plaintiff against the wall, took him to the ground, handcuffed him, and arrested him. (*Id.*; docket no. 1 at 7-8; docket no. 23-3 at 11-13.) The assault-and-battery charges against Plaintiff were dropped, but Plaintiff was convicted of an unrelated firearms charge on December 9, 2010. Plaintiff now alleges that (1) Defendants did not

---

[2]With the exception of a few details that will be noted herein, the Parties appear to agree on the facts that occurred in this matter. Their arguments are, therefore, generally centered around their interpretation of the law in question with regard to each issue.

[3]Plaintiff asserts that his girlfriend may never have made this statement. (Docket no. 29 ¶ 2.)

[4]Plaintiff asserts that the supposed neighbor does not live in the apartment building. (Docket no. 29 ¶ 4.) He claims that the apartment landlord will testify to this, but he does not cite to any evidence supporting this claim. (*Id.*)

have probable cause for the arrest; (2) during the arrest, Defendants used excessive force; (3) his public arrest was humiliating; (4) his imprisonment following the arrest was unlawful; (5) the prosecution related to the arrest was malicious; and (6) Defendants caused intentional infliction of emotional distress. (Docket no. 1 at 6.)

### B. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the

facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.**    **Analysis**

        **1.**    **Plaintiff's Second Motion for Summary Judgment**

Plaintiff's Second Motion for Summary Judgment requests that the Court grant his first Motion for Summary Judgment based on Defendants' failure to respond to his first Motion in a timely manner. (Docket no. 24.) Plaintiff filed his first Motion for Summary Judgment on June 6, 2012. (Docket no. 20.) Plaintiff argues that Defendants' Response was due in 30 days under the 1946 Amendment to Fed.R.Civ.P. 56(a). (Docket no. 24 at 1.) Plaintiff's assertion is incorrect as the rules set forth in the 1946 Amendment have been specifically superceded. *See* Fed.R.Civ.P. 56 (2010 Amendments, Subd. (b)). But even assuming that Defendants were required to respond within 30 days, Defendants filed their Response on June 29, 2012. Therefore, the Court recommends denying Plaintiff's Second Motion for Summary Judgment [24].

        **2.**    **Plaintiff's Motion Amending Summary Judgment**

Plaintiff's Motion Amending Summary Judgment re-raises several arguments made in his initial Motion for Summary Judgment and also appears to allege that Defendants counsel committed perjury when Defendants' initial response indicated that Plaintiff "choked" his girlfriend.[5] (Docket no. 28 at 1-2.) Plaintiff argues that this mischaracterization is sufficient to justify criminal contempt and summary judgment in Plaintiff's favor. (*Id.* at 2.)

Local Rule 7.1 provides that "a Motion must be accompanied by a single brief," and "[a] Movant may also file *a* reply breif." E.D. Mich. L.R. 7.1(d)(1)(A) (emphasis added). While Plaintiff entitles this document "Motion Amending Summary Judgment," the document itself appears to be a supplemental brief in support of his first Motion for Summary Judgment or in support of his Reply to Defendants' Responses.[6] In either case, Plaintiff's Motion Amending his Motion for Summary Judgment is filed in violation of E.D. Mich. LR 7.1. Moreover, Defendants assert that while the police report indicates that Plaintiff grabbed his girlfriend by the neck, she told someone in the department's Domestic Violence Unit, "He Choked Me!" (Docket no. 32 at 3; Docket no. 32-3.) Defendants cite to the Domestic Violence Unit Report in support of this assertion; Plaintiff argues that the statement is hearsay. (Docket no. 32-3; Docket no. 36 at 1.) Therefore, drawing all justifiable inferences in the light most favorable to the non-moving party, the Court recommends denying Plaintiff's Motion Amending his Motion for Summary Disposition.

### 3. **Plaintiff's first Motion for Summary Judgment**

---

[5]The police report for the incident in question indicates that Plaintiff's girlfriend told police that Plaintiff "grabbed her by the neck." (Docket no. 23-3 at 1.) Defendants stated in their Response to Plaintiff's Motion for Summary Judgment that the assault "involved choking and threats of death." (Docket no. 23 at 5.)

[6]It appears that the additional allegation of perjury is intended to impeach Defendants' credibility with regard to their initial response.

Plaintiff requests that the Court grant his Motion for Summary Judgment on all six of his claims. (Docket no. 20.) Defendants contend that the undisputed facts related to each of these claims support summary judgment in Defendants' favor, but they do not request such relief at this time. (Docket no. 23.)

### a. Plaintiff's Claim of Arrest and Detention without Probable Cause

Plaintiff claims that Defendants, acting under color of state and federal law, arrested him for assault and battery in violation of the Fourth and Fourteenth Amendments. (Docket no. 1; Docket no. 20 at 1-2.) The essence of Plaintiff's Motion on this claim is that "Michigan law does not authorize a police officer to arrest suspect (sic) for an alleged assault . . . where the assault was not committed in the presence of an officer." (Docket no. 20 ¶ (1)(h)-(j) (citing Mich. Comp. Laws Ann. § 764.15(1)(a); *Risbridger v. Connelly*, 275 F.3d 565 (6th Cir. 2002); *People v. Dixon*, 222 N.W.2d 749 (1974), *abrogated on other grounds by People v. Hawkins*, 468 Mich. 488 (2003).) Moreover, Plaintiff asserts that even if having probable cause is sufficient to justify an arrest on a misdemeanor, Defendants' reliance on the two witnesses' statements was insufficient to create probable cause. (Docket no. 29 at 1 (citing *Beck v. Ohio*, 379 U.S. 89 (1964); *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000)).)

Defendants draw the Court's attention to MCL § 764.15a, a statutory exception to MCL § 764.15:

> A peace officer may arrest an individual for [assault and battery] regardless of whether the peace officer has a warrant or whether the violation was committed in his or her presence if the peace officer has . . . reasonable cause to believe both of the following:
>
> (a) The violation occurred or is occurring.
>
> (b) The individual . . . resides or has resided in the same household as the victim, has

6

or has had a dating relationship with the victim.

(Docket no. 23 at 4 (quoting Mich. Comp. Laws § 764.15a).) It is undisputed that Plaintiff and his girlfriend lived in the same household. (Docket no. 23-3 at 1.) Thus, Defendants were justified in arresting Plaintiff if they had reasonable cause to believe that Plaintiff had committed assault and battery on his girlfriend.

Defendants contend that they had reasonable cause to arrest Plaintiff based on the statements from his girlfriend and their neighbor. (*Id.* at 4-5.) Plaintiff claims that his girlfriend may not have told the police that he committed the alleged assault, but he has no evidence to support this assertion. (Docket no. 29 ¶ 2.) Moreover, a determination of cause involves "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire*, 205 F.3d at 315 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). And in general, such a determination is a jury question. *Id.* (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995)). Therefore, viewing the evidence in a light most favorable to Defendants, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### b. Plaintiff's Excessive Force Claim

To establish an excessive-force claim under 42 U.S.C. § 1983, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants were persons acting under color of state law. Thus, the only remaining issue is whether Defendants deprived Plaintiff of a constitutional right.

The Fourth Amendment governs excessive force claims and requires the court to determine whether the amount of force used was objectively reasonable in light of the facts and circumstances

confronting the officers' actions. *Graham v. Connor,* 490 U.S. 386, 395-96 (1989) "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). In determining the reasonableness of the force used, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram v. City of Columbus,* 185 F.3d 579, 596 (6th Cir. 1999) (citation omitted). The court should be guided by the principle that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 397. This determination should be made "from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).

Plaintiff claims that Defendants drawing their weapons, shoving him against the wall, and taking him down to the floor while arresting him was excessive force in light of the circumstances. (Docket no. 1 ¶¶ 11-13; Docket no. 20 ¶¶ (2)(a)-(d).) Plaintiff does not assert that Defendants physically injured him; instead, Plaintiff claims that the officers needlessly drew their weapons and used physical force to arrest him when (1) the nature of the offense was "family trouble;" (2) Plaintiff did not present a threat; and (3) Plaintiff did not attempt to resist arrest. (Docket no. 29 at 2.) Defendants assert that the incident they reported to "involved choking and threats of death," and "[w]hen confronting a perpetrator possessing a demonstrated willingness to employ physical violence and to threaten escalation of such violence to a fatal level, a police officer's act of drawing

8

and pointing a weapon is not unreasonable." (Docket no. 23 at 5.)

Plaintiff has not shown that he is entitled to judgment as a matter of law. In hindsight, it appears that the officers did not need to draw their weapons or take Plaintiff to the ground to arrest him; indeed, the police report indicates, "No force was used in this arrest," and Plaintiff seems to have cooperated with Defendants. Nevertheless, viewed from the perspective of a reasonable officer on the scene, and viewed in a light most favorable to Defendants, the Court finds that Defendants were justified in drawing their weapons and taking Plaintiff to the ground. Therefore, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### c. Plaintiff's Humiliation During Unlawful Arrest Claim

It is unclear exactly what Plaintiff claims with regard to this matter. Plaintiff appears to assert that Defendant caused him humiliation when "excessive force was used on him in Public in front of his neighbors."[7] (Docket no. 20 ¶ (3)(a).) Plaintiff cites no evidence or law in support of this claim, and Defendants do not respond. Therefore, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### d. Plaintiff's False Imprisonment Claim

Plaintiff claims that he was imprisoned for 26 days as a result of his arrest and the assault-and-battery charges. (Docket no. 20 ¶ 4(a).) Again, in Plaintiff's Motion, he cites to no law or fact in support of this claim. (*See id.*) Plaintiff's Complaint appears to assert that he was arrested on Saturday, November 27, 2010, and arraigned on November 30, 2010. (Docket no. 1 ¶ 25.) Plaintiff claims that he spent 26 days in jail before the charges against him were finally dropped on December

---

[7]To the extent Plaintiff implies that this claim is somehow supported by a showing of excessive force, Plaintiff's Motion for Summary Judgment should be denied concurrently with a denial of his Motion for Summary Judgment on his claim for excessive force.

9

23, 2010. (*Id.* ¶ 31.)

Defendants do not respond to this charge, but again, Plaintiff's failure to support his Motion with a citation to fact or law is fatal. Moreover, Plaintiff's claim of false imprisonment appears to be predicated on a finding of false arrest.[8] Therefore, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### e. Plaintiff's Malicious Prosecution Claim

Plaintiff claims that "the criminal proceeding was institution (sic) without probable cause and was favorably terminated in plaintiff (sic) favor." (Docket no. 20 ¶ (5)(a).) Again, Plaintiff cites no law or facts in support of this contention, and Defendants do not respond. This, alone, would be fatal to Plaintiff's Motion for Summary Judgment. It appears, however, that Plaintiff claims that the prosecution of his case was in violation of the Fourth and Fourteenth Amendments because the charges were eventually dropped or because he was arrested without probable cause.

To prevail on a malicious prosecution claim "a plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (citation and internal quotation marks omitted). A police officer may be liable for malicious prosecution if he made, influenced, or participated in the decision to prosecute. *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010). Despite the issues surrounding probable cause in this matter, Plaintiff does not allege facts or provide evidence to show that Defendants made, influenced, or participated in the decision to prosecute Plaintiff. Moreover,

---

[8]Additionally, a review of Plaintiff's criminal history shows that on December 9, 2010, he was sentenced to two years in prison on an unrelated firearms charge. It appears that Plaintiff may have been held for missing a court appearance in the firearms matter when he was taken to court for his arraignment in this matter. (*See* Docket 1 ¶¶ 26-28.)

10

Plaintiff's claim is inapposite; the prosecutor chose *not* to prosecute Plaintiff's case. For these reasons, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### f.     Plaintiff's Intentional Infliction of Emotional Distress Claim

To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). Plaintiff claims that "this whole situation was highly unpleasant and caused the plaintiff anguish, grief and complications with another court appearance." (Docket no. 20 ¶ (6)(a).) Additionally, Plaintiff claims that Defendants gave his car keys to Plaintiff's girlfriend. (*Id.* ¶ (6)(b).) Once again, Plaintiff does not support his claim with a citation to any fact or law, which is fatal to his Motion for Summary Judgment. Moreover, he has not shown that Defendant's conduct was extreme and outrageous, and his statement that the situation was "highly unpleasant" does not rise to a level of severe emotional distress. Therefore, the Court recommends denying Plaintiff's Motion for Summary Judgment on this claim.

### D.     Conclusion

For the above-stated reasons, the Court recommends denying Plaintiff's Motion for Summary Judgment [20], Plaintiff's Motion for Summary Judgment [24], and Plaintiff's Motion Amending his Motion for Summary Judgment [28].

### III.     Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 13, 2012         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

# PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Karl Jackson and Counsel of Record on this date.

Dated: November 13, 2012     s/ Lisa C. Bartlett
                             Case Manager