UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KARL JACKSON,**

       **Plaintiff,**                   **CIVIL ACTION NO. 12-CV-10645**

  **vs.**                                 **DISTRICT JUDGE STEPHEN J. MURPHY**

                                   **MAGISTRATE JUDGE MONA K. MAJZOUB**

**LENIN AMARANTE, et al.,**

       **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Karl Jackson, a Michigan state prisoner, brings this pro se action alleging a violation of 42 U.S.C. § 1983 against Defendants Lenin Amarante and Farad Qureshi, two City of Detroit police officers; two unknown individuals; and the City of Detroit. (Docket no. 1.) Before the Court is Defendant Amarante's and Defendant Qureshi's Motion for Summary Judgment. (Docket no. 50.) Plaintiff filed a Response to the Motion (docket no. 59) and an Amended Response (docket no. 60). All pretrial matters have been referred to the undersigned for consideration. (Docket no. 8.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.

**I.     Recommendation**

For the reasons that follow,  the Court recommends GRANTING IN PART and DENYING IN PART Defendants' Motion for Summary Judgment [50].  The Court should grant Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of (1) humiliation during an unlawful arrest, (2) false imprisonment, (3) malicious prosecution, and (4) intentional infliction of emotional distress. The Court should deny Defendants' Motion for Summary Judgment with respect

to Plaintiff's claims of (1) arrest and detention without probable cause, and (2) excessive force.

The Court further recommends dismissing Plaintiff's claims against the two John Doe Defendants without prejudice under Fed. R. Civ. P. 4(m) and against the City of Detroit under 28 U.S.C. § 1915.

In sum, the undersigned recommends that Plaintiff's only surviving claims should be his claims against Defendants Amarante and Qureshi for (1) arrest and detention without probable cause and (2) use of excessive force.

## II. Report

### A. Facts

On November 27, 2010, at approximately 7:30 p.m., Defendants Amarante and Qureshi responded to a call at Plaintiff's residence. (*See* docket no. 1 at 7.) Petra Guerrero, Plaintiff's live-in girlfriend, called the police to report that Plaintiff had assaulted her earlier that day. (Docket no. 50 at 7-8.) Plaintiff was not at the scene when Defendants arrived. Guerrero told the police that Plaintiff grabbed her by the neck, shoved her onto a chair, and threatened to have her killed after she told Plaintiff that she did not want to be in a relationship with him. (*Id.*) Guerrero now asserts that she never told Defendants that Plaintiff choked or assaulted her on the day in question. (Docket no. 60 at 2.)

While Defendants were conducting their investigation, Plaintiff arrived on the scene. (Docket no. 1 at 7.) Defendants drew their weapons, pushed Plaintiff against the wall, took him to the ground, handcuffed him, and arrested him; Plaintiff did not resist. (Docket no. 1 at 7-8.) Defendant Amarante continued to point his gun at Plaintiff while Defendant Qureshi conducted a body search. (*Id.* at 8.) In his Complaint, Plaintiff claims that (1) Defendants did not have probable cause for the arrest; (2) during the arrest, Defendants used excessive force; (3) his public arrest was

humiliating; (4) his imprisonment following the arrest was unlawful; (5) the prosecution related to the arrest was malicious; and (6) Defendants caused intentional infliction of emotional distress. (Docket no. 1 at 6.)

### B.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

  **C.** **Analysis**

    **1.** **Defendants' Motion for Summary Judgment**

      **a.** **Plaintiff's Claim of Arrest and Detention without Probable Cause**

Plaintiff asserts in his Complaint that Defendants lacked probable cause to effect his arrest, and therefore, his arrest was unlawful and violated his 4th and 14th Amendment rights. (*See* Docket no. 1.) Defendants, on the other hand, assert that probable cause existed for Plaintiff's arrest, imprisonment, and prosecution.

Plaintiff supports his contention that Defendants lacked probable cause by relying on Michigan Law, which authorizes warrantless misdemeanor arrests only when the offense is committed in the arresting officer's presence. (Docket no. 20 ¶ (1)(h)-(j) (citing Mich. Comp. Laws Ann. § 764.15(1)(a).) Plaintiff contends that because Defendants were not present during the alleged misdemeanor, Defendants had no probable cause to arrest him. In response, Defendants cite MCL 764.15a as a statutory exception to this general rule:

> A peace officer may arrest an individual for [assault and battery] regardless of whether the peace officer has a warrant or whether the violation was committed in his or her presence if the peace officer has . . . reasonable cause to believe both of the following:

>> (a) The violation occurred or is occurring; and
>>
>> (b) The individual . . . resides or has resided in the same household as the victim, has or has had a dating relationship with the victim.

(*Id.* at 10-11 (quoting Mich. Comp. Laws § 764.15a).)  In this case, it is apparent that the Plaintiff and his girlfriend lived in the same household.  (Docket no. 50-2 at 2.)  And Guerrero's own report of being assaulted and threatened by Plaintiff, coupled with a neighbor's affirmation that Plaintiff threatened Guerrero's life, would ordinarily establish that the Defendants had reasonable cause to believe that the violation occurred.  (*See* docket no. 50 at 11; docket no. 26 at 5.)  Thus, considering only this evidence, the Court would be inclined to recommend granting Defendants' Motion for Summary Judgment.

However, in his Amended Response, Plaintiff provides a signed declaration from Guerrero insisting that she never told Defendants that Plaintiff choked or assaulted her on the day in question[1]:

> I *Petra Guerrero* on or around November 27, 2010 never told Officer Lenin Amarante or Officer Fahad Qureshi or any other office that Karl Jackson choked or assaulted me on the day in question.

(Docket no. 60 at 2 (italicized portion filled in separately in original).)  A determination of cause involves "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire*, 205 F.3d at 315 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)).  Thus, whether Defendants believed that a violation had occurred necessarily

---

[1] Plaintiff titles the document an "Affidavit," but affidavits are "voluntary declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." West Group, Black's Law Dictionary 58 (Bryan A. Garner et al. eds., 7th ed. 1999). Conversely, declarations are "formal, written statement[s] — resembling an affidavit but not notarized or sworn to — that attest[], under penalty of perjury, to facts known by the declarant." *Id.* at 415.  It does not appear that Guerrero's "Affidavit" was sworn to before an officer of any kind; thus, Guerrero's "Affidavit" is more properly characterized as a declaration. Nevertheless, "[s]uch a declaration, if properly prepared, is admissible in federal court with the same effect as an affidavit." (*Id.* at 415.)  Therefore, for purposes of the instant motion, the Court will accept Guerrero's statement in support of Plaintiff's argument.

depends on whether Guerrero told them that an assault or battery had occurred. And in general, such a determination is a jury question. *Id.* (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995)).

While the Court acknowledges that Guerrero's eleventh-hour statement is rife with questions regarding her credibility, such questions are not appropriately answered by the Court when viewing the evidence in a light most favorable to Plaintiff. Indeed, without documentation further supporting Defendants' contention, such questions are more properly answered by a trier of fact. Thus, while the Court is inclined to accept Defendants' assertion that there is an absence of evidence to support Plaintiff's claim, Guerrero's declaration sufficiently fills that hole and creates a genuine issue of material fact; therefore, the Court recommends denying Defendants' Motion for Summary Judgment on this claim.

### b.     Plaintiff's Excessive Force Claim

Plaintiff alleges that Defendants used excessive force during his arrest when they pointed their firearms, threw him up against a wall, took him to the ground, and placed a knee in his back while placing him in handcuffs. (Docket no. 20 at 2.) Defendants assert that an officer is authorized to employ the force necessary to effect a lawful arrest. (Docket no. 50 at 12.) Thus, Defendants insist that the force used against Plaintiff was reasonable given the surrounding circumstances. (*Id.*)

To establish an excessive-force claim under 42 U.S.C. § 1983, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). It is apparent that Defendants were persons acting under color of state law. Therefore, the Court must determine whether Defendants deprived Plaintiff of a federal right.

The Fourth Amendment governs excessive force claims and requires the court to determine whether the amount of force used was objectively reasonable in light of the facts and circumstances

confronting the officers. *Graham v. Connor,* 490 U.S. 386, 395-96 (1989) "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). To make such a decision, the Court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram v. City of Columbus,* 185 F.3d 579, 596 (6th Cir. 1999) (citation omitted). And in doing so, the court should be guided by the principle that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. at 397. This determination should be made "from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).

It is undisputed that Plaintiff was not resisting arrest or attempting to flee. And Defendants do not claim that Plaintiff threatened them in any way. To the contrary, Defendants' report notes that "no force was used on this arrest" and simply states that "arrestee [was] handcuffed and taken to [the police station." (Docket no. 50-1 at 1.) Thus, this motion turns on whether the forced used to arrest Plaintiff was reasonable in light of the severity of the crime.

Plaintiff acknowledges that he sustained no physical injury as a result of the arrest, and it appears that Defendants attempted to make him as comfortable as possible during and after he was taken into custody. (*See* docket no. 50 at 7-9 (setting forth Plaintiff's deposition testimony wherein he stated that Defendants guided him to the floor while taking him down, allowed him to pull his arms behind his back under his own power, and extended the distance between his arms by adding

a second pair of handcuffs).) It appears, then, that Plaintiff's claim rests on Defendants' decision to draw their weapons.

"When confronting a perpetrator possessing a demonstrated willingness to employ physical violence to a fatal level, a police officer's act of drawing and pointing a weapon is not unreasonable. To the contrary, such is justified by the need to protect the reporting victim from further violence, protect the officer from violence redirected from the victim to the officer, and to deter flight." (Docket no. 50 at 12.) According to Defendants, Guerrero's initial report indicated that she had been assaulted, choked, and threatened. Such a statement could have led Defendants to believe that they needed to draw their weapons to protect themselves and Guerrero from Plaintiff's demonstrated willingness to employ physical violence to a fatal level. Nevertheless, as discussed *supra*, Guerrero now asserts that she never reported such behavior by Plaintiff. (Docket no. 60 at 2.) And Defendants initially responded to a report of "family trouble." (*See* docket no. 50-2) Thus, absent Guerrero's report of threats or physical violence, Defendants had no reason to fear for their safety or Guererro's.

Like Plaintiff's claim for arrest and detention without probable cause, the success of Plaintiff's excessive force claim is dependent on the credibility of Guererro's declaration. Therefore, viewing the evidence, including Guererro's questionable declaration, in a light most favorable to Plaintiff, the Court recommends denying Defendants' Motion for Summary Judgment on this claim.

### c. Plaintiff's Intentional Infliction of Emotional Distress Claim

To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). In

Plaintiff's own Motion for Summary Judgment, Plaintiff claimed that the situation was "highly unpleasant and caused the Plaintiff anguish, grief, and complications with another court appearance." (Docket No. 20 at 3.) Plaintiff also asserted that his keys were taken from him by Defendants and were given to Guererro despite Plaintiff's objections. (*Id.*)

Although Plaintiff stated that the situation was "highly unpleasant," such a claim does not rise to a level of severe emotional distress. Likewise, Defendants note that there is no evidence of severe emotional distress based on medical records or testimony. (Docket no. 50 at 18.) Moreover, Plaintiff has offered no evidence that the Defendants intended to inflict any emotional distress upon him. Therefore, the Court recommends granting Defendants' Motion for Summary Judgment on this claim.

### d.     Defendants' Qualified Immunity Argument

Defendants allege that they are entitled to qualified immunity on all of Plaintiff's claims. (Docket no. 50 at 11.) The Sixth Circuit has set forth a three-step inquiry to determine whether a defendant is entitled to qualified immunity: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra,* 186 F.3d 685, 690 (6th Cir. 1999).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should

ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Defendants do not assert, and indeed could not support an argument, that Plaintiff's Fourth Amendment rights were not clearly established or that a reasonable person would not have known about such rights. Thus, Defendants' qualified immunity claim turns on whether a constitutional violation occurred and whether Defendants' acts were objectively unreasonable. Because the Court finds that Plaintiff's Fourth Amendment rights to be free from arrest without probable cause and free from the use of excessive force during such an arrest may have been violated, Defendants' qualified immunity claim must fail. Indeed, as Defendants argue, "[t]he scope of qualified immunity is evaluated using the same 'objective reasonableness' standard used for evaluating excessive force claims." (Docket no. 50 at 11 (citing *Laudenslager v City of Saline*, 1998 US Dist LEXIS 8130 (E.D. Mich, 1998)).) Assuming, *arguendo*, that Guerrero did not tell Defendants that Plaintiff threatened her or used physical force during their "family trouble," Defendants' decision to draw their weapons and arrest Plaintiff may have been objectively unreasonable in light of Plaintiff's Fourth Amendment Rights.

### 2. Plaintiff's Remaining Claims Against Defendants Amarante and Qureshi[2]

In addition to the three claims discussed above, Plaintiff raises claims of (1) humiliation during an unlawful arrest; (2) false imprisonment; and (3) malicious prosecution. (Docket no. 1 at 6.) Defendants do not address these claims in their Motion for Summary Judgment, but they do

---

[2] The Court also addressed these claims in relation to Plaintiff's Motion for Summary Judgment, wherein the Court implied that Plaintiff's claims were unsupported, but Defendants had not moved for Summary Judgment at that time. (*See* docket no. 43.) The Court has, therefore, adopted a significant amount of language in this section from its earlier Report and Recommendation.

request that the court grant summary judgment in full. (Docket no. 50 at 19.) Therefore, the Court will consider these claims in light of the evidence available.

### a. Plaintiff's Humiliation During Unlawful Arrest Claim

It is unclear exactly what Plaintiff claims with regard to this matter. Plaintiff appears to assert that Defendant caused him humiliation when "excessive force was used on him in public in front of his neighbors." (Docket no. 20 ¶ (3)(a).) Plaintiff cites no evidence or law in support of this claim in his Complaint or his response to Defendants' Motion. Therefore, the Court recommends granting Defendants' Motion for Summary Judgment on this claim.

### b. Plaintiff's False Imprisonment Claim

Plaintiff claims that he was imprisoned for 26 days as a result of his arrest and the assault-and-battery charges. (Docket no. 20 ¶ 4(a).) Again, Plaintiff cites to no law or fact in support of this claim in his Complaint or in his response to Defendants' Motion. Plaintiff's Complaint appears to assert that he was arrested on Saturday, November 27, 2010, and arraigned on November 30, 2010. (Docket no. 1 ¶ 25.) Plaintiff claims that he spent 26 days in jail before the charges against him were finally dropped on December 23, 2010. (*Id.* ¶ 31.) Plaintiff's failure to support his claim with any fact or law is fatal. Moreover, Plaintiff's claim of false imprisonment appears to be predicated on a finding of false arrest.[3] Therefore, the Court recommends granting Defendants' Motion for Summary Judgment on this claim.

### c. Plaintiff's Malicious Prosecution Claim

Plaintiff claims that "the criminal proceeding was institution (sic) without probable cause

---

[3]Additionally, a review of Plaintiff's criminal history shows that on December 9, 2010, he was sentenced to two years in prison on an unrelated firearms charge. It appears that Plaintiff may have been held for missing a court appearance in the firearms matter when he was taken to court for his arraignment in this matter. (*See* Docket 1 ¶¶ 26-28.)

and was favorably terminated in plaintiff (sic) favor." (Docket no. 20 ¶ (5)(a).) Again, Plaintiff cites no law or facts in support of this contention. It appears, however, that Plaintiff claims that the prosecution of his case was in violation of the Fourth and Fourteenth Amendments because the charges were eventually dropped or because he was arrested without probable cause.

A police officer may be liable for malicious prosecution if he made, influenced, or participated in the decision to prosecute. *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010). Despite the issues surrounding probable cause in this matter, Plaintiff does not allege facts or provide evidence to show that Defendants made, influenced, or participated in the decision to prosecute Plaintiff. Moreover, Plaintiff's claim is inapposite; the prosecutor chose *not* to prosecute Plaintiff. For these reasons, the Court recommends granting Defendants' Motion for Summary Judgment on this claim.

### 3. Plaintiff's Claims Against the John Doe Defendants and the City of Detroit

Plaintiff's Complaint was filed on February 14, 2012, and listed five Defendants: Officer Lenin Amarante; Officer Fahad Qureshi; (Unknown) Reviewing Supervisor; (Unknown) Assigned Detective; and the City of Detroit. (Docket no. 1 at 2.) Nevertheless, only Defendants Amarante, Qureshi, and one John Doe (listed as "reviewing supervisor, assigned detective) were listed in the Court's docket. Notably, Plaintiff has only successfully served Defendants Amarante and Qureshi.

#### a. John Doe Defendants

"An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." (*Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422 at *2 (E.D. Mich. Aug. 23, 2007) (citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D. Mass. 1994)). Moreover, Defendants must be served within 120 days of filing the complaint. Fed.

R. Civ. P. 4(m).

Plaintiff failed to serve either of the unknown defendants in a timely manner. As a result, on July 26, 2012, the Court ordered Plaintiff to show cause why his complaint should not be dismissed for failure to comply with Fed. R. Civ. P. 4(m). (Docket no. 25.) In response, Plaintiff claimed that the failure to serve the unknown defendants was due to Defendants' failure to provide Plaintiff with the proper contact information. (Docket no. 34 at 1.) Nevertheless, it is Plaintiff's responsibility to effectuate service, and nearly one year later, Plaintiff has still failed to properly serve or identify either of the unknown defendants. Therefore, the Court recommends that Plaintiff's claims against the two unknown defendants be dismissed without prejudice.

### b. City of Detroit

28 U.S.C. § 1915(e)(2)(B) requires the court to review all complaints where the plaintiff is proceeding *In Forma Pauperis* and *sua sponte* dismiss a case if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), or seeks monetary relief against a defendant who is immune from such relief. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

As with the two unnamed Defendants, Plaintiff has failed to properly serve the City of Detroit under Fed. R. Civ. P. 4(m). Nevertheless, because Plaintiff is proceeding pro se, and because the Court did not properly include the City of Detroit as a Defendant on the docket in this matter, the Court is inclined to recommend correcting the docket and issuing a show cause order for Plaintiff's failure to properly effectuate service, thereby giving Plaintiff an opportunity to do so. Issuing such an order in this matter, however, would be futile, as Plaintiff's claims against the City of Detroit fail under Fed. R. Civ. P. 12(b)(6).

To establish liability against the City of Detroit, Plaintiff must allege that the City engaged in a policy or custom that was the moving force behind the deprivation of a constitutionally protected right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is a well-settled rule that municipal liability under § 1983 must be premised upon active unconstitutional behavior and not upon a vicarious liability or *respondeat superior* theory. *Id.* at 691. Even if Defendants Amarante and Qureshi are found to have violated Plaintiff's Fourth Amendment rights, Plaintiff has neither alleged nor suggested, based on his factual allegations, that the City of Detroit engaged in a policy or custom that caused or influenced such a violation. Therefore, the Court recommends that Plaintiff's claims against the City of Detroit be dismissed under 28 U.S.C. § 1915.

### D. Conclusion

For the above-stated reasons, the Court recommends GRANTING IN PART and DENYING IN PART Defendants' Motion for Summary Judgment [50]. The Court should grant Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of (1) humiliation during an unlawful arrest, (2) false imprisonment, (3) malicious prosecution, and (4) intentional infliction of emotional distress. The Court should deny Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of (1) arrest and detention without probable cause, and (2) excessive

force.

The Court further recommends dismissing Plaintiff's claims against the two John Doe Defendants without prejudice under Fed. R. Civ. P. 4(m) and against the City of Detroit under 28 U.S.C. § 1915.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 12, 2013          s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Karl Jackson and Counsel of Record on this date.

Dated: July 12, 2013                    s/ Lisa C. Bartlett
                                        Case Manager