UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL JACKSON,

    Plaintiff,

v.

LENIN AMARANTE et al.,

    Defendants.
_____/

Case No. 12-cv-10645

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION** (document no. 61), **GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (document no. 50),
**AND DENYING PLAINTIFF'S MOTION REQUESTING CASE TO BE SET FOR JURY
TRIAL** (document no. 66) **AND DEFENDANTS' MOTION FOR LEAVE TO FILE LATE
OBJECTIONS TO THE REPORT AND RECOMMENDATION** (document no. 67) **AS MOOT**

Pro se Plaintiff Karl Jackson sued Detroit police officers Lenin Amarante, Farad Qureshi, two unknown officers, and the City of Detroit for alleged violations of 42 U.S.C. § 1983. The Court referred all pretrial matters to Magistrate Judge Mona K. Majzoub for resolution. Order, ECF No. 8. Defendants moved for summary judgment and the magistrate judge issued a Report and Recommendation ("Report") suggesting the Court grant Defendants' motion in part and deny the motion in part. Report, ECF No. 61. The Court stayed and administratively closed the case pending the termination of the bankruptcy stay imposed by the City of Detroit's voluntary bankruptcy petition, and reopened the case upon a motion from Jackson. Now that the parties have been afforded the required amount of time to object to the Report, the Court will adopt in part and reject in part the Report, grant Defendants' motion for summary judgment, and dismiss the case.

**BACKGROUND**

Jackson's claims stem from his arrest for assault and battery after his then-girlfriend, Petra Guerrero ("Guerrero"), allegedly called 911 with a domestic violence complaint.

Arrest Report, ECF No. 50-2. At the time of the incident, Jackson had been living with Guerrero for at least sixteen months. Jackson Dep. 8–9, ECF No. 50-1. Officers Amarante and Qureshi responded to the call. Jackson was not home at the time, but the officers spoke with Guerrero and with a neighbor, Kimberly Warmack. Arrest Report, ECF No. 50-2. Guerrero told the officers that Jackson had grabbed her by the neck, shoved her onto a chair, and threatened to have her killed after she told Jackson that she did not want to be in a relationship with him. *Id.* Warmack told the officers that she heard the commotion, went to check on Guerrero, and overheard the threat. *Id.*

Jackson showed up while the police were still there. As he approached, the officers asked Jackson to identify himself, then drew their weapons and approached him once he did. Jackson Dep. 41:5–42:16, 61:11–15, ECF No. 50-1. Qureshi pushed Jackson against the wall, patted him down, performed a leg sweep, and used his hands to guide Jackson down to the floor face first. *Id.* at 42:16–19, 65:16–24. Jackson admits that Qureshi did not slam him down, that he did not sustain any physical injuries from the arrest, and that he did not seek any medical treatment or counseling afterwards. *Id.* at 65:25–66:08, 80:17–23, 88:06–11.

Once on the floor, Qureshi placed his knee on Jackson's back to keep him from moving, and Jackson placed his arms behind his back under his own power. *Id.* at 66:9–20. At no point did the officers twist Jackson's arms or hurt him in any way. *Id.* at 80:19–23. The officers handcuffed him, picked him up, told him he was under arrest for misdemeanor assault and battery, and placed him in the police car. Jackson complained that his handcuffs were uncomfortable, and Amarante attempted to alleviate Jackson's discomfort by extending Jackson's handcuffs with an extra pair linked in between. Compl. 1–2, ECF

No. 1; Jackson Dep. 69:25–71:02. The assault and battery charges against Jackson were later dropped.

In his complaint, Jackson contends that (1) the officers did not have probable cause for the arrest; (2) the officers used excessive force during the arrest; (3) his public arrest was humiliating; (4) his imprisonment following the arrest was unlawful; (5) the prosecution related to the arrest was malicious; and (6) Defendants caused intentional infliction of emotional distress. Compl., ECF No. 1.

## STANDARD OF REVIEW

Civil Rule 72(b) governs the review of a magistrate judge's report. The district judge must consider any objections to the report timely filed within 14 days of its entry and may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Because a district judge always retains jurisdiction over a motion after referring it to a magistrate judge, a district judge is entitled to review the magistrate judge's findings of fact and conclusions of law. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St.*

3

*Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court must take care, in evaluating the motion, not to make judgments on the quality of the evidence, because the purpose of summary judgment is to determine whether a triable claim exists. *Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998) ("[W]eigh[ing] the evidence . . . is never appropriate at the summary judgment stage.").

## DISCUSSION

I.    <u>Claims Against Officers Amarante and Qureshi</u>

Regarding Jackson's six claims against Amarante and Qureshi, the magistrate judge recommended that the Court deny summary judgment regarding the claims of arrest and detention without probable cause (Count 1) and excessive force (Count 2), and grant summary judgment regarding the claims of humiliation (Count 3), false imprisonment (Count 4), malicious prosecution (Count 5), and intentional infliction of emotional distress (Count 6). The Court agrees that Counts 3–6 should be dismissed.

The Court disagrees, however, with the Report's conclusion that Counts 1 and 2 should survive summary judgment. In reaching her conclusion, the magistrate judge considered an "affidavit" from Guerrero that Jackson submitted as an "amended response" to Defendants' summary judgment motion. In it, Guerrero signed and dated a statement claiming that she never told the officers that Jackson choked, threatened, or assaulted her on the day in question. Am. Resp., ECF No. 60. Citing the applicable Black's Law Dictionary definitions, the magistrate judge properly construed the document as a declaration, and not an affidavit, because Guerrero did not have it sworn before an officer authorized to administer oaths. Report 5 n.1, ECF No. 61. While acknowledging that the "eleventh-hour statement is rife with questions regarding [Guerrero's] credibility," the

4

magistrate judge found that the declaration is "admissible in federal court with the same effect as an affidavit." *Id.* at 6, 5 n.1 (citing *Black's Law Dictionary* (7th ed. 1999)).

The Sixth Circuit has held that "an unsworn affidavit cannot be used to support or oppose a motion for summary judgment," but 28 U.S.C. § 1746 provides a statutory exception that allows an unsworn declaration to substitute for an affidavit if the statement therein is signed, dated, certified as true and correct, and verifies that its content is true "under penalty of perjury." 28 U.S.C. § 1746; *Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998)); *see Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012) (citing *Pollock*). Although Guerrero's declaration is signed and dated, it does not state that the content is true "under penalty of perjury." It therefore fails to satisfy the statutory requirement, and the Court will not consider it as evidence in the present motion. The Court likewise rejects the magistrate judge's reasoning to the extent that she considered the declaration to be admissible evidence, and will analyze Jackson's first two claims de novo.

The officers argue that they are entitled to qualified immunity, which shields state officials from liability for civil damages unless a plaintiff can show that (1) the defendant violated a constitutional right (2) that was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Because Jackson cannot show that the Amarante and Qureshi Defendants violated his constitutional rights, he is not entitled to relief.

A.   Arrest and Detention Without Probable Cause

Jackson claims that Amarante and Qureshi violated his Fourth and Fourteenth Amendment rights because they lacked probable cause to arrest him. Amarante and

5

Qureshi argue that they made the arrest in accordance with M.C.L. § 761.15a, which states in pertinent part as follows:

> A peace officer may arrest an individual for [committing assault and battery] regardless of whether the peace officer has a warrant or whether the violation was committed in his or her presence if the peace officer has . . . reasonable cause to believe both of the following:
>
> (a) The violation occurred or is occurring [and]
>
> (b) The individual . . . resides or has resided in the same household as the victim, has or has had a dating relationship with the victim, or is a spouse or former spouse of the victim.

Mich. Comp. Laws § 764.15a. Accordingly, they argue that there was probable cause to effect Jackson's arrest and detention because (1) Jackson and Guerrero resided in the same household at the time of the offense, and (2) Guerrero told the officers that Jackson assaulted her and threatened to have her killed, and Warmack corroborated the threat. Mot. Summ. J. 4–5, ECF No. 50.  Although the Sixth Circuit has previously considered a similar "preferred arrest policy" from Ohio in a probable cause analysis, *see Thacker v. City of Columbus*, 328 F.3d 244, 256–57 (6th Cir. 2003), the Court need not consider the officers' compliance with Michigan's "preferred arrest policy" as a factor here to find that the officers had probable cause to arrest Jackson.

"Generally, probable cause exists when the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). There need only be a probability or substantial possibility of criminal activity, not an actual showing of such activity. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). To assess probable cause, a court examines the "facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (citation omitted).

Once the officer establishes probable cause, he can pursue an arrest without any obligation to continue investigating. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003).

In instances of domestic violence, police officers need only believe that a probability existed that the accused committed the offense; they do not need proof that each element of the domestic violence offense was met. *Thacker*, 328 F.3d at 256. A victim's confession that the accused abused her is sufficient to establish probable cause. *Id.* at 257; *see Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (finding that a sexual assault accusation, alone, sufficiently established probable cause).

Under Michigan law, an assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (citing *People v. Nickens*, 470 Mich. 622 (2004)). A battery is "the willful touching of the person of another by the aggressor or by some substance put in motion by him." *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001) (quoting *People v. Bryant*, 80 Mich. App. 428 (1978)). For the police to have had probable cause to arrest Jackson, they had to reasonably believe that he intended to batter or had actually battered Guerrero. *Id.*

Here, Guerrero stated that Jackson had grabbed her by the neck, shoved her onto a chair, and threatened to have her killed after she told Jackson that she did not want to be in a relationship with him. Warmack also stated that she heard the threat. Arrest Report, ECF No. 50-2. The Court finds that such evidence establishes probable cause, and that Jackson has not provided admissible evidence that would lead a reasonable jury to find otherwise.

B.  Excessive Force

7

Claims that police officers have used excessive force during an arrest should be analyzed under the Fourth Amendment's "objective reasonableness" test, which analyzes the force used "from the perspective of a reasonable officer on the scene" based on the facts known to the defendant officer. *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994) (citing *Graham v. Connor*, 490 U.S. 386, 395–96 (1989)). The Fourth Amendment is not a "guarantee against unreasonable or outrageous official conduct generally." *Ewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002). Officers "are often forced to make split second judgments" in "tense, uncertain, and rapidly evolving" circumstances, and an officer generally has "the right to use some degree of physical coercion or threat thereof" to effect the arrest. *Graham*, 490 U.S. at 396–97. There is no "mechanical application" for courts to follow. *Id.* at 396. Instead, they should consider (1) the severity of the crime, (2) the immediacy of the threat posed to the officers or others, and (3) the suspect's efforts to flee or resist arrest. *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007). Courts are generally willing to resolve questions of reasonableness of force at the summary judgment stage. *Giannola v. Peppler*, 142 F.3d 433 (6th Cir. 1998).

In their report, the officers stated that "no force was used on this arrest," and that they handcuffed Jackson and took him to the police station. Arrest Report, ECF No. 50-2. But according to Jackson, the officers used excessive force during the arrest by drawing their weapons, pushing him up against the wall, and taking him to the ground. Compl. 3–4, ECF No. 1.

Applying the *Williams* considerations to the facts construed in a light most favorable to Jackson, the Court finds that the force used by the officers here was not excessive. It is undisputed that Jackson did not resist arrest, attempt to flee, or threaten the officers. While cooperation during the arrest weighs against the officers, it does not outweigh the fact that

8

the officers were responding to the serious allegation that Jackson grabbed Guerrero by the throat, threw her into a chair, and threatened to have her killed. After Warmack corroborated the threat, it was reasonable for the officers to believe that Jackson posed a threat to Guerrero's safety.

When Jackson arrived and the officers confirmed Jackson's identity, they drew their weapons and moved in for the arrest. That action did not violate Jackson's constitutional rights. *See Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989) (finding that there is a distinction between showing force, and actually using force, and that an officer's pointing a gun at a bystander does not rise to the level of a constitutional violation). And even when combining it with the remaining actions, the force used was not excessive.

Qureshi pushed Jackson up against the wall, but the contact was incidental. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment."); *Watkins v. City of Southfield*, 221 F.3d 883, 890 (6th Cir. 2000) (finding no excessive force when officers pulled plaintiff over after plaintiff was driving suspiciously in an area of recent criminal activity, the officers had no idea whether plaintiff was armed, and plaintiff suffered no serious injury when hitting his head on the frame of the squad car door as the officers placed him in the car). Qureshi then guided, but did not slam, Jackson to the floor, placed a knee on Jackson's back while Jackson put his hands behind his back under his own power, and cuffed Jackson. At no point did the officers twist Jackson's arms or hurt him in any way; on the contrary, Jackson later received assistance from Amarante when he complained of discomfort caused by his handcuffs. Most notably, Jackson did not sustain any injuries from the arrest, and did not seek any medical treatment or counseling afterwards*.*

*Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015) may have applied if Qureshi had thrown Jackson to the ground, ground his knee into his back, and misidentified Jackson as the person who allegedly committed the crime. But undisputed facts showed that Qureshi lowered Jackson to the ground in a controlled manner, simply placed his knee on Jackson's back to keep him from moving, and had a strong basis to believe that Jackson was the person Guerrero called 911 to complain about; namely, Guerrero's statement and Warmack's corroboration of the threat. Because the officers' actions did not constitute excessive force, the Court will rule in their favor.

II. Claims against City of Detroit and John Doe Defendants

The magistrate judge recommended that Jackson's claims against the two John Doe defendants be dismissed without prejudice for failing to comply with Civil Rule 4, and the claims against the City of Detroit be dismissed under 28 U.S.C. § 1915. While the Court agrees that all the claims should be dismissed, they certainly should be dismissed *with* prejudice. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) ("A dismissal for failure to state a claim . . . is a judgement on the merits, and is therefore done with prejudice." (citation and internal quotation marks omitted)). Even if Jackson had successfully served the John Doe defendants, he only mentions them in passing in his false imprisonment and malicious prosecution claims. *See* Compl. ¶¶ 24–31, 33–39, ECF No. 1; Mot. Summ. J. 2–3, ECF No. 20. And as the magistrate judge stated, Jackson cites to no law or facts in direct support of those claims. Report 11–12, ECF No. 61. Thus, those claims against the John Doe defendants do not survive dismissal under 28 U.S.C. § 1915. Accordingly, the Court will adopt the Report's dismissal of all the counts as to the City of Detroit and the John Doe defendants, but will instead dismiss those claims with prejudice.

All parties will therefore be dismissed with prejudice from the instant action.

10

## ORDER

**WHEREFORE** it is hereby **ORDERED** that the magistrate judge's Report and Recommendation (document no. 61) is **ADOPTED IN PART AND REJECTED IN PART.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (document no. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Case to be Set for Jury Trial (document no. 66) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Late Objection to Magistrate's Report and Recommendation (document no. 67) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: May 29, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 29, 2016, by electronic and/or ordinary mail.

        Carol Cohron
        Case Manager